IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ARTHUR HAMILTON,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )       CIVIL ACT. NO. 2:21-cv-504-ECM
                                    )                (WO)
JEFFERSON DUNN, *et al.*,            )
                                    )
            Defendants.             )

## MEMORANDUM OPINION and ORDER

## I. INTRODUCTION

On July 29, 2021, Plaintiff Arthur Hamilton ("Hamilton") filed a complaint against Defendants Jefferson S. Dunn ("Dunn"), Kim Thomas ("Thomas"), Gwendolyn Givens ("Givens"), Deborah Toney ("Toney"), Cynthia Stewart ("Stewart"), and Gary Hetzel ("Hetzel") (collectively, "Defendants"). (Doc. 1).  Hamilton alleged that he was held in prison five years beyond his lawful sentence due to a calculation error by an unnamed employee at the Alabama Department of Corrections ("ADOC").  In response to the Defendants' first motion to dismiss, Hamilton filed an amended complaint, alleging four causes of action:  false imprisonment, negligence or wantonness,[1] violations of his Fourteenth Amendment due-process rights, and failure to train or supervise. (Doc. 22).  The Court dismissed his negligence or wantonness claim with prejudice and all other claims

---

[1] Hamilton conceded his negligence or wantonness claim in his response to the Defendants' motion to dismiss the first amended complaint. (*See* Doc. 35 at 17).

without prejudice because the amended complaint exhibited the characteristics of a shotgun pleading. (Doc. 38).  The Court ordered Hamilton to file a new amended complaint.

Hamilton filed a second amended complaint ("complaint") on November 18, 2022. (Doc. 41).  This complaint again named Dunn, Thomas, Givens, and Toney as defendants. Hamilton dropped Stewart and Hetzel as defendants, however, and added Jerry Ferrell ("Ferrell") and Walter Myers ("Myers").  In this complaint, Hamilton asserted three causes of action:  false imprisonment (Count I), violations of his Fourteenth Amendment due-process rights (Count II), and failure to train or supervise pursuant to federal law (Count III).  He brings the federal claims pursuant to 42 U.S.C. § 1983.  All claims are brought against the Defendants in their individual capacities.  After the complaint was filed, Ferrell was dismissed from the lawsuit on a motion by Hamilton. (Doc. 55).  Thereafter, Myers was dismissed from the lawsuit for want of prosecution. (Docs. 61).

Now pending is the remaining Defendants' motion to dismiss the complaint for failure to state a claim. (Doc. 42).  The motion is fully briefed and ripe for review.  After careful consideration, the Court concludes that the Defendants' motion is due to be GRANTED on Plaintiff's federal claims (Counts II and III).  Because the Court declines to exercise supplemental jurisdiction over the state-law claim in this case, the remaining state-law false imprisonment claim will be DISMISSED without prejudice.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Hamilton's state-law claim pursuant to 28 U.S.C. § 1367(a).  Personal jurisdiction and venue are uncontested,

2

and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

The determination of "whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quotations omitted).  Indeed, "[a] pleading that offers labels and conclusions or a

formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations omitted).

## IV.  FACTS[2]

Hamilton alleges that he was overdetained by five years in ADOC prisons due to a clerical error.  Hamilton was convicted of various crimes in state court.  When the state trial court communicated his sentences to the ADOC, an unknown ADOC employee incorrectly recorded certain sentences to run consecutively rather than concurrently. Consequently, Hamilton should have been released from prison on or before December 15, 2014, but he was not released until December 15, 2019.

Hamilton now sues two previous ADOC commissioners and two Wardens at prisons where he was allegedly overdetained.  Dunn served as the ADOC Commissioner from January 2015 until December 2021.  Thomas served as the ADOC Commissioner from 2011 until January 2015.  Givens was the Warden of two prisons where Hamilton was imprisoned during unspecified periods.  Toney served as Warden at another prison where Hamilton was imprisoned, also during an unspecified period.  Construing the allegations in Paragraph 17 liberally and affording Hamilton every possible inference in his favor, he alleges that on one occasion, he told Givens that his "official sentence incorrectly included an additional five years," that he begged her to look into the matter, and that she told him she would "look into his sentencing issue" but failed to do so. (Doc. 41 at 9, para. 17).

---

[2]  This recitation of the facts is based on Hamilton's second amended complaint ("complaint").  The Court recites only the facts pertinent to resolving the Defendants' motion to dismiss.  For purposes of ruling on the motion, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Hamilton.

Hamilton also allegedly informed unnamed prison officials of his overdetention.  If these unnamed officials investigated the matter, according to Hamilton, they were unable to discover the miscalculation due to the poor quality of ADOC records.

Dunn knew of rampant overcrowding and understaffing plaguing the ADOC prison system.  The U.S. Department of Justice notified Dunn on October 6, 2016, that it had opened a Civil Rights of Institutionalized Persons Act investigation into Alabama's male prison system.  Dunn himself testified in another federal case that the ADOC was wrestling with a two headed monster:  overcrowding and understaffing.

## V.  DISCUSSION

### A.  Federal Law Claims

Hamilton alleges that his five-year overdetention violated his Fourteenth Amendment due process rights.[3]  Although Hamilton does not clarify whether this is a substantive due process claim or procedural, the Eleventh Circuit analyzes overdetention claims under the substantive due process framework. *See Alcocer v. Mills*, 906 F.3d 944, 954 (11th Cir. 2018) (holding that the right against overdetention "is protected by the Fourteenth Amendment's guarantee of substantive due process").  Generally, the Fourteenth Amendment Due Process Clause includes the "right to be free from continued

---

[3] Because his overdetention occurred while he was a sentenced prisoner, Hamilton's claim likely arises under the Eighth Amendment. *See, e.g.*, *McCurry v. Moore*, 242 F. Supp. 2d 1167, 1179 (N.D. Fla. 2002); *cf. West v. Tillman*, 496 F.3d 1321, 1325, 1327 (11th Cir. 2007) (analyzing a pretrial detainee's overdetention claim under the Fourteenth Amendment).  But whether the claim arises under the Eighth Amendment or Fourteenth Amendment, the analysis is the same. *See Williams v. Ga. Dep't of Corr.*, 2012 WL 12895357, at *9 (N.D. Ga. Mar. 27, 2012).

detention after it was or should have been known that the detainee was entitled to release." *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1563 (11th Cir. 1993).

To bring a Fourteenth Amendment overdetention claim, a plaintiff must allege "that the defendant acted with deliberate indifference to [his] due-process rights." *Alcocer*, 906 F.3d at 953. Deliberate indifference requires allegations that "(1) the defendant had subjective knowledge of a risk of serious harm, consisting of continued detention when the plaintiff was entitled to be released; (2) he disregarded that risk; and (3) he did so by conduct that is more than mere negligence." *Id.* In other words, a plaintiff must allege the defendant "had subjective knowledge of" the plaintiff's overdetention, and that the defendant "unreasonably disregarded that over-detention." *Jones v. Willingham*, 2023 WL 2232807, at *6 (N.D. Ala. Jan. 24, 2023) (citing *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007)). "Human error does not equal deliberate indifference." *West*, 496 F.3d at 1327.

Moreover, an actionable due process claim under § 1983 requires a plaintiff to allege a causal connection "between the official's acts or omissions and the alleged constitutional deprivation." *Holt v. Glenn*, 361 F. App'x 75, 77 (11th Cir. 2010) (per curiam) (quoting *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)). Applying this requirement to an overdetention claim, then, a plaintiff must allege that a defendant's specific acts or omissions cause the alleged overdetention. If a plaintiff sues defendants for supervisory liability under § 1983, however, defendant officials cannot be held liable "for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation

omitted).   Rather, for a supervisor to be liable under § 1983, (1) he must "personally participate[] in the alleged unconstitutional conduct" or (2) there must be "a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.*

A plaintiff can establish a causal connection in the following ways:  (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," (2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights," or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (alterations adopted) (quotations and citation omitted).  A plaintiff's burden to hold a supervisor "liable in his individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (alteration adopted) (citation omitted).

### 1.  Shotgun pleading

The Court initially notes that, like his first amended complaint, Hamilton's second amended complaint resembles a shotgun pleading.  Shotgun pleadings have been "roundly condemned" in the Eleventh Circuit, "both for the confusion they cause litigants and the havoc they wreak on the docket." *See McCall v. Bank of Am., N.A.*, 2016 WL 5402748, at *1 (M.D. Ala. Sept. 26, 2016) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320–23 (11th Cir. 2015)).  Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain a short and plain statement showing that the plaintiff is entitled to relief. FED. R. CIV. P. 8(a)(2).  The allegation should be "simple, concise, and direct."

*Id.* 8(d)(1).  Each claim should be stated in separate, numbered paragraphs, "limited as far as practicable to a single set of circumstances." *Id.* 10(b).  This precision requirement enables the opposing party to adequately respond to the claims against it and allows the court to "determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Weiland*, 792 F.3d at 1320 (citation omitted).

Hamilton claims to have cured the deficiencies of his first amended complaint by identifying when individual Defendants oversaw the prisons at which he was allegedly overdetained.  He specifies these periods in the sections titled "Parties" and "Factual Allegations Common to All Counts." (Doc. 41 at 2, 4).  He then incorporates these sections into each cause of action,[4] which he claims are against all Defendants.  Notably, Hamilton does not specify which facts listed in the "Factual Allegations" section relate to specific causes of action.  Nor do the individual causes of action specify against "which of the defendants the claim[s are] brought." *See Weiland*, 792 F.3d at 1323.  Nevertheless, Hamilton contends that the added detail in the second amended complaint makes the "nature of Hamilton's claims . . . clear," and that each Defendant is properly on notice as to what the claim is against them individually. (Doc. 44 at 9).

The Court disagrees.  The Court cannot parse through Hamilton's separate "Factual Allegations" section to "determine which facts support which claims" against individual

---

[4] Hamilton appears to incorrectly incorporate the facts alleged in his "Factual Allegations" section.  At the beginning of each cause of action, Hamilton "incorporates the allegations contained in paragraphs 1–46 of this Complaint, as if fully set forth herein." (Doc. 41 at 11, 12).  However, the "Factual Allegations" section is broken up into paragraphs spans 1–12 and 1–28. (*See id.* at 4–11).  For purposes of ruling on the Defendants' motion to dismiss, the Court assumes Hamilton intended to incorporate the factual allegations set forth in his section titled, "Factual Allegations Common to All Counts." (*Id.*).

Defendants, nor whether Hamilton "has stated any claims upon which relief can be granted." *Weiland*, 792 F.3d at 1320 (citation omitted). Hamilton's "Factual Allegations" section alleges actions or inaction committed by multiple defendants over multiple years at multiple different facilities. Some Defendants allegedly acted (or failed to act) in purely supervisorial roles, while others allegedly directly interacted with Hamilton. The allegation for failure to investigate his overdetention claim was made against unnamed "ADOC officials." Even this factual claim indicates that Hamilton does not know whether these officials actually failed to investigate his claims. He framed the allegation with an alternative factual claim: "Hamilton was told by ADOC officials that they would look into his sentencing issue, but never did, or if they did, ADOC's record keeping system was of such poor quality that ADOC officials were unable to discover the error." (Doc. 41 at 9).

This type of all-encompassing factual claim illustrates Hamilton's failure to identify specific action or inaction taken by a named Defendant, which contravenes the precision requirement in Rule 8. Although he claims to have told Givens—the only Defendant with whom Hamilton allegedly directly interacted—that he was being overdetained, Hamilton does not allege whether Givens acted or failed to act on that knowledge. All allegations of action or inaction are made against unspecified "ADOC officials." These ADOC officials are not named in this case, and the ADOC is not a defendant.

Furthermore, Hamilton's causes of action do not clarify against whom specific claims are brought. For example, Count I for false imprisonment is brought against "the Defendants" for "their combined and concurring actions and omissions falsely imprison[ing] him after the expiration of his sentence." (Doc. 41 at 11). The "Defendants"

allegedly collectively "intended to confine Plaintiff, and such combined and concurring actions ensured Mr. Hamilton's" overdetention. (*Id.*).   Count II is brought against the "Defendants" for violating Hamilton's Fourteenth Amendment rights by "individually and collectively act[ing] with deliberate indifference as to the proper term of confinement and timely release." (*Id.* at 12).   In Count III for failure to train or supervise, Hamilton alleges his overdetention "was caused by the policies, practices, and customs of Defendants." (*Id.* at 13).   In this claim, he attempts to clarify that, "[a]s supervisory officials, each Defendant is liable for the unconstitutional acts of his/her subordinates, as each Defendant either established a de facto custom or policy concerning the administrative mechanisms designed to calculate prisoner release dates." (*Id.*).   Count III, in fact, is the only cause of action that specifically named a defendant:   Dunn.   Accordingly, the Court cannot identify which causes of action are specifically brought against Thomas, Givens, and Toney, nor which facts alleged in the "Factual Allegations" section correlate to their alleged liability.

Notwithstanding the lack of clarity in Hamilton's shotgun complaint, the Court finds, for the reasons that follow, that his complaint also fails to state a claim under Rule 12(b)(6) as to each Defendant.

### 2. Dunn

Hamilton alleges that Dunn violated his Fourteenth Amendment right to be free from overdetention by acting with deliberate indifference to the record keeping system in the ADOC during the period of Hamilton's overdetention.   Hamilton sues Dunn in his supervisorial role as the ADOC commissioner.   Because Hamilton does not claim that Dunn personally participated in any alleged unconstitutional conduct, Hamilton must

allege facts plausibly showing a causal connection between Dunn's action or inaction and the alleged constitutional violation. *See Cottone*, 326 F.3d at 1360.

Dunn, as the Commissioner of the ADOC, according to Hamilton, oversaw the "overcrowding and understaffing" at the ADOC's prisons such that the overcrowding and understaffing became "the de facto policy of Defendant Dunn." (Doc. 41 at 13). Dunn's "deliberate indifference" to these issues, according to the complaint, "effectively ratif[ied]" the issues. (*Id.*). Hamilton also alleges that Dunn "declined to implement sufficient training, sufficient policies, or any legitimate mechanism for oversight." (*Id.*). Finally, Hamilton alleges Dunn "had actual and prior knowledge that severe overcrowding and understaffing made it difficult for correctional officers and other prison officials to notice and correct errors in prisoner's sentences." (*Id.*).

These allegations are conclusory and unsupported by factual allegations sufficient to meet the *Iqbal* plausibility standard. *See* 556 U.S. at 678. Only two paragraphs in the complaint's "Factual Allegations" section mention Dunn. First, Hamilton alleges Dunn knew that the U.S. Department of Justice opened a Civil Rights Institutionalized Persons Act investigation into Alabama's male prisons in 2016. (*Id.* at 5). Second, Dunn allegedly testified in another case that the ADOC was "wrestling with a 'two headed monster' overcrowding and understaffing." (*Id.*). These two facts do not correlate to Hamilton's conclusory assertion that Dunn knew "that severe overcrowding and understaffing made it difficult for correctional officers and other prison officials to notice and correct errors in prisoner's sentences." (*Id.* at 13). Notably, there is no allegation that other sentence miscalculations occurred at the ADOC under Dunn's supervision due to overcrowding and

11

understaffing.  Likewise, no facts alleged a specific remedial action that Dunn took or failed to take.

Put another way, the Court finds insufficient facts alleged to support Hamilton's conclusory allegation that Dunn's knowledge of overcrowding and understaffing equates to knowledge of sentence miscalculations.  Because Hamilton has not alleged facts plausibly demonstrating, if true, that Dunn was either personally involved in the alleged constitutional violation or that he was causally connected to the alleged violation, Hamilton's federal claims against Dunn (Counts II and III) are due to be dismissed.

### 3. Thomas

Like Dunn, Thomas is sued for his supervisory role as ADOC commissioner during a time in which the ADOC allegedly violated Hamilton's Fourteenth Amendment right to be free from overdetention.  Therefore, Hamilton's claims against Thomas must survive the same standard as his claims against Dunn.  Because no facts alleged show Thomas personally participated in any alleged unconstitutional conduct, Hamilton must allege facts showing a causal connection between actions taken by Thomas and the alleged constitutional violation.

Notably, Thomas is not mentioned at any point in Hamilton's "Factual Allegation" section or his individual claims.  Hamilton simply lists Thomas as a Defendant and notes the period in which he served as ADOC commissioner, and how that time overlapped with Hamilton's incarceration.  Because Hamilton does not allege facts that plausibly raise a claim against Thomas, beyond the conclusory inference that his role as ADOC commissioner somehow contributed to Hamilton's overincarceration, Thomas' motion to

dismiss is due to be granted on Hamilton's federal claims (Counts II and III). *See Iqbal*, 556 U.S. at 678; *cf. Walker v. SunTrust Bank of Thomasville*, 2008 WL 4004714, at *4 (M.D. Ga. Aug. 26, 2008) ("The [Defendant] is listed as a Defendant in the style of the case, but it is not mentioned in the body of the Complaint.  Because the Complaint does not allege any facts giving rise to a claim against the [Defendant], its Motion to Dismiss is granted.").[5]

### 4.  Givens

Hamilton claims that Givens personally participated in the violation of his Fourteenth Amendment right against overdetention.  Additionally, he claims that Givens is liable under a theory of supervisory liability.

The Court begins with Givens' alleged personal participation.  Because Givens has raised the defense of qualified immunity, Hamilton must show that her alleged conduct violated clearly established law.  Qualified immunity is "an *immunity from suit*" that "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).  "Any plaintiff suing a government official under 42 U.S.C. § 1983 has a steep hill to climb.  The doctrine of qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mitchell v. Peoples*, 10 F.4th 1226, 1229 (11th Cir. 2021) (quoting *District of*

---

[5] Although the Court recognizes that *Walker* is nonbinding, the Court finds its analysis persuasive.

*Columbia v. Wesby*, 583 U.S. 48, 63 (2018)); *see also Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020).  The defendant official bears the initial burden of showing she was "acting within [her] discretionary authority." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019) (citation omitted).  The burden then shifts to the plaintiff to show (1) that the defendant "violated a constitutional right" and (2) that "this right was clearly established at the time of the alleged violation." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1181 (11th Cir. 2020) (citation omitted).  Here, the Court will assume without deciding that Givens was acting within her discretionary authority and that her conduct violated Hamilton's constitutional rights.

Although it is clearly established that prisoners have a constitutional right to be free from overdetention, the question before the Court in this case is whether Givens' alleged conduct, as described in the second amended complaint, amounts to deliberate indifference to Hamilton's constitutional rights under clearly established law.

Hamilton's allegations specific to Givens are that on one occasion, he told her that his "official sentence incorrectly included an additional five years," and he "begged" her to look into the matter. (Doc. 41 at 9, para. 17).  Givens then allegedly responded that she would look into the issue but failed to do so.  Hamilton does not allege that he provided Givens any additional information regarding his situation.  For example, he does not allege that he told her his sentences were actually imposed to run concurrently rather than consecutively.  Under the facts alleged in this case, Givens' failure to respond to Hamilton's single vague complaint that he is or will be overdetained does not amount to deliberate indifference under clearly established law. *Cf. West*, 496 F.3d at 1328

(concluding that prison official was not deliberately indifferent to plaintiff's right to timely release where plaintiff complained to the official in writing but offered no specific details about the communication and the official did eventually investigate plaintiff's situation; explaining that "[a]t most, [the official] may be faulted for negligently failing to follow up on [plaintiff's] earlier inquiries").   At most, Givens' alleged conduct amounts to negligence, which is insufficient to establish deliberate indifference. *See id.* at 1327–28.

The Court does not suggest that Hamilton's claim would necessarily succeed if he alleged that he provided Givens additional information, nor does the Court suggest that providing additional information would always be required to prevail on an overdetention claim.  The Court makes these observations to underscore that, under clearly established law, Givens was not deliberately indifferent to Hamilton's constitutional rights when she failed to respond to Hamilton's single complaint.

Because the claim based on Givens' personal participation fails, Hamilton's claim against Givens based on supervisory liability may proceed if he alleged facts demonstrating that she, as a supervisor, was causally connected to the violation.  He fails to do so.  There are insufficient factual allegations to show (1) that there was a widespread history at Holman Correctional Facility—where Givens served as Warden—of failure to investigate inmates' overdetention claims; (2) that Givens had any "custom or policy" in place pertaining to investigating inmates' overdetention claims; or (3) that Givens "directed [prison officials] to act unlawfully or knew that [prison officials] would act unlawfully and failed to stop them." *See Cottone*, 326 F.3d at 1360.  Therefore, there are insufficient factual allegations to support a claim that Givens was either personally involved in or causally

connected to Hamilton's alleged constitutional violation.  His federal claims against Givens (Counts II and III) are due to be dismissed.

### 5. Toney

Hamilton argues that he sufficiently alleged that Toney personally participated in the alleged unconstitutional overdetention.  Contrary to this assertion, however, Hamilton only lists one allegation in the complaint pertaining to Toney.  In his "Factual Allegations" section, he claims that Toney was the warden of Bibb County Correctional Facility, where Hamilton was housed during an unspecified period of overdetention. (Doc. 41 at 9). Hamilton does not allege sufficient facts tying Toney directly to an interaction with Hamilton or a familiarity with his claims.  Therefore, he cannot sufficiently show, on these allegations, that Toney personally participated in any alleged unconstitutional conduct.

With no facts showing Toney's personal participation, Hamilton must allege facts demonstrating she, as a supervisor, was causally connected to the alleged constitutional violation.  He fails to do so.  There are insufficient factual allegations (1) that there was a widespread history at Bibb County Correctional Facility of failure to investigate inmates' overdetention claims; (2) that Toney had any "custom or policy" in place pertaining to investigating inmates' overdetention claims; or (3) that Toney "directed [prison officials] to act unlawfully or knew that [prison officials] would act unlawfully and failed to stop them." *Cottone*, 326 F.3d at 1360.  Therefore, there are insufficient factual allegations supporting a claim that Toney was either personally involved in or causally connected to Hamilton's alleged constitutional violation.  His federal claims against Toney (Counts II and III) are due to be dismissed.

### B.  State Law Claims

In addition to federal claims pursuant to § 1983, Hamilton brings a state-law false imprisonment claim against all Defendants.  The Court declines to exercise supplemental jurisdiction over Hamilton's remaining state-law claim.   Where all federal claims are dismissed prior to trial, district courts are encouraged to dismiss any remaining state-law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004).  Before doing so, the Court must consider the factors of judicial economy, convenience, fairness, and comity. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 537 (11th Cir. 2015). "Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). "Federal courts are (and should be) loath to wade into uncharted waters of state law, and should only do so when absolutely necessary to the disposition of a case." *Ameritox*, 803 F.3d at 540. In this case, there are state-law immunity issues raised, which are best resolved by the state courts.  Further, there is nothing before the Court to suggest that the remaining factors— convenience and fairness—weigh in favor of retaining subject matter jurisdiction over claims arising under state law.  Moreover, the Court can discern no significant prejudice to any party, particularly considering 28 U.S.C. § 1367(d)'s provision tolling the statute of limitations on any of the state-law claim.  Accordingly, the Court declines to exercise supplemental jurisdiction over the state-law claim pursuant to § 1367(c)(3).

## VI.  CONCLUSION

Accordingly, for good cause, it is

ORDERED that the Defendants' motion to dismiss (doc. 42) is GRANTED to the extent that Plaintiff's Counts II and III are DISMISSED with prejudice.  It is further

ORDERED that the Court DECLINES to exercise supplemental jurisdiction over the remaining state-law claim in this case (Count I) pursuant to 28 U.S.C. § 1367(c), and this claim is DISMISSED without prejudice.

A separate Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 28th day of September, 2023.

      /s/ Emily C. Marks
      EMILY C. MARKS
      CHIEF UNITED STATES DISTRICT JUDGE